Z. Kent Sullivan
BAXTER BRUCE & SULLIVAN P.C.
P.O. Box 32819
Juneau, Alaska 99803
ph: (907) 789-3166
fax: (907) 789-1913
Attorneys for Plaintiff Reinwand

**FILED**

DEC 1 5 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ALASKA

KURT F. REINWAND and LYNN D. )
REINWAND, TRUSTEES OF THE )
KURT F. AND LYNN D. REINWAND )
LIVING TRUST, )
)
      Plaintiff, )
)
vs. )
)
)
)
THE UNITED STATES OF AMERICA, )
DEPARTMENT OF AGRICULTURE, )
FOREST SERVICE, ) COMPLAINT TO QUIET TITLE
) Case No. ~~1J05-~~_____ CV (___)
      Defendant. )
) **J 05 - 0 0 16 CV (JWS)**
_____)

COME NOW Plaintiffs, by and through their attorneys of record, Baxter Bruce

and Sullivan P.C., and for their complaint against the above-named Defendant, state and

allege as follows:

**PRELIMINARY STATEMENT**

1.    This action is brought by Plaintiffs for the purpose of quieting title, as

against Defendant, in and to land accreted sea-ward of the original meander line of real

property Plaintiffs own in Southeast Alaska. As will be set forth herein, as the result of a

survey completed by R & M Engineering on October 20, 2004, it has been determined

that a substantial amount of accretion has taken place sea-ward of Plaintiffs' original meander line. As the record owner of the upland real property, Plaintiff also owns any land which accretes to that upland real property. Defendant owns real property adjacent to Plaintiffs. Plaintiffs have based their newly created metes and bounds legal description on the survey completed by R & M Engineering. Plaintiffs recognize that because Defendant is an adjacent property owner that Defendant might claim an ownership interest in and to their real property which is adverse to their own interest. The present action is intended to place Defendant on notice of the accretions which have occurred and for Court confirmation that Defendant has no right, title or interest in and to the newly identified parcel now forming a part of the upland real property owned by Plaintiff.

## PARTIES

2.      Plaintiffs are individuals, residing in the United States and owning property in Southeast Alaska on the West side of Wheeler Creek, approximately one-half mile south of Game Cove on the West side of Admiralty Island.

3.      Defendant, United States of America, holds title, on behalf of the Department of Agriculture, Forest Service, to real property adjacent to Plaintiffs' real property on Admiralty Island, Alaska.

## JURSIDICTION/VENUE

4.      This Court has jurisdiction over this controversy based upon 28 U.S.C. § 2409(a), as the matter involves adjudication of title to real property in which the United States may claim an interest.

5.     Venue in this district court is proper, pursuant to 28 U.S.C. § 1391, as many

if not all of the allegations against Defendant arose and took place in this district and the

real property which is the subject of this action is located in this district.

## CLAIMS FOR RELIEF

6.     Plaintiffs are the fee simple owners of the following described real property

on Admiralty Island, Alaska:

> Lot A, Subdivision of U. S. Survey 1159, according to Plat
> 85-124, Records of the Juneau Recording District, First
> Judicial District, State of Alaska,
>
> Containing 16.20 acres, more or less.

The above-described real property is delineated on attached Exhibit "1" as "Lot A".

7.     Plaintiffs acquired title to the above-described property by deed recorded

October 7, 2004 at Serial No. 2004-008921-0, and as further evidenced by a copy the

Litigation Guarantee report issued by First American Title, both documents attached as

Exhibits "2" and "3" respectively.

8.     The tidal affected shoreline of Wheeler Creek, which empties into Game

Cove in Chatham Strait, is located contiguous to Plaintiffs' easterly boundary of the

above described property.  Plaintiffs have prepared a survey of their property described

in Paragraph 6 above, which has determined that a substantial accretion has taken place

sea-ward of Plaintiffs' original meander line depicted on Exhibit "1" attached hereto.

Said accretion is more particularly described as:

A tract of land lying sea-ward of Lot A, Subdivision of U. S. Survey 1159 according to Plat 85-124, Records of the Juneau Recording District, First Judicial District, State of Alaska, described as:

BEGIN at Corner No. 2 of U. S. Survey 1159, thence S 89° 58' 00" E 725.22 feet to the true point of beginning; run thence S 89° 58' 00" E 110.86 feet; thence S 30° 31' 00" E 192.06 feet; thence S 22° 06' 45" E 96.57 feet; thence S 41° 54' 30" E 52.50 feet; thence S 27° 41' 15" E 324.38 feet; thence S 11° 34' 30" E 224.57 feet; thence N 87° 07' 30" W 247.33 feet; thence N 8° 00' W 569.45 feet; thence N 34° 15' W 293.79 feet to the true point of beginning.

Said accretion contains 2.88 acres as evidenced by the attached plat marked as Exhibit "1" and delineated as Accretion Area.

9.      Plaintiffs claim ownership of the accreted land sea-ward of the original meander line established at the time of the original survey plat, a copy of said plat being attached hereto as Exhibit "4," and recorded Patent No. 936822, dated May 24, 1924, a copy of which is attached hereto as Exhibit "5."

10.      The purpose of the present quiet title action is to quiet title to Plaintiffs' parcel of accreted real property described above.

11.      The above-referenced survey was completed by R&M Engineering, Inc., in Juneau, Alaska, on or about September 25, 2004.  An original copy of that survey is attached hereto as Exhibit "1."

12.      Defendant United States of America, Department of Agriculture, Forest Service ("USFS"), among other properties, owns the following described real property on the West side of Admiralty Island:

> Lots B through G, U. S. Survey 1159 according to Plat 85-
> 124, Juneau Recording District, First Judicial District, State
> of Alaska.

The location of the above-described property is identified on attached Exhibit "1" and

delineated as "U. S. Forest Service."

13.     The USFS acquired its interest in the above-described parcel by a deed,

naming The Trust for Public Land as Grantor and the United States of America as

Grantee, dated June 27, 1988 and recorded July 1, 1988, in Book 301, at Page 548,

records of the Juneau Recording District, First Judicial District, State of Alaska, and

attached hereto as Exhibit "6."

14.     Defendant USFS also owns the following described real property on the

West side of Admiralty Island:

> That portion Lot 4, Section 16, T44S, R65E, Copper River
> Meridian in the Tongass National Forest within the Admiralty
> National    Monument,    Kootznoowo    Wilderness,    lying
> contiguous the Northerly boundary of Lot A, Subdivision of
> U. S. Survey 1159 according to Plat 85-124, Records of the
> Juneau Recording District, First Judicial District, State of
> Alaska.

The location of the above-described property is identified on attached Exhibit "1" and

delineated as "Tongass National Forest."

15.     The USFS acquired its interest in the above-described parcel by

Presidential proclamation on December 1, 1978 in the creation of the Admiralty National

Monument, Kootznoowoo Wilderness.

16.    The State of Alaska ("Alaska"), while not named as a party in the present action, will be named as a party in a contemporaneously filed quiet title action in the Superior Court for the First Judicial District, State of Alaska at Juneau. That case is entitled *Reinwand v. State of Alaska, et al*. As articulated in that action, among other properties, Alaska owns all state tidelands below mean high water line, having acquired them from the federal government on statehood. The location of the accreted area which was previously located below the mean high water mark is identified on attached Exhibit "1" and delineated as "Accretion Area".

## COUNT I - OWNERSHIP BASED UPON COMMON LAW DOCTRINE OF
## ACCRETIONS

17.    Plaintiffs re-allege Paragraphs 1 through 16 above.

18.    Based upon the above-referenced deeds, documentation, research, and findings, Plaintiffs assert that the real property described by the metes and bounds description in Paragraph 8 belongs to Plaintiffs and Plaintiffs claim ownership of the lands accreted as they are the upland owners and believe that they are entitled to the same. Based upon the common law doctrine of accretions, Plaintiffs are the sole owners of the accreted real property described in Paragraph 8.

19.    Defendant, USFS, is identified in this action, together with Alaska in the quiet title action in the Superior Court for the First Judicial District, State of Alaska at Juneau, entitled *Reinwand v. Alaska, et al.,* Case No. 1JU-05-____ CI, because they all have recorded interests in property directly adjacent to the newly described Accretion

Area. As such, these entities may claim an ownership interest in and to the subject property, which is adverse and/or contrary to Plaintiffs' interest. Whatever claims these entities may assert in and to the subject property are inferior to the claims and interests of Plaintiffs.

20.    Plaintiffs seek to quiet title to the subject property in their name in order to correct any cloud or ambiguity created by the lack of conveyance and definition in the real property records of the State of Alaska intended to give constructive notice of ownership to the Accretion Area now described by metes and bounds in Paragraph 8.

WHEREFORE, Plaintiff prays that this Court will:

A.    Issue a judgment and decree quieting title in favor of the Plaintiff for that real property described as:

> A tract of land lying sea-ward of Lot A, Subdivision of U. S. Survey 1159 according to Plat 85-124, Records of the Juneau Recording District, First Judicial District, State of Alaska, described as:
>
> BEGIN at Corner No. 2 of U. S. Survey 1159, thence S 89° 58' 00" E 725.22 feet to the true point of beginning; run thence S 89° 58' 00" E 110.86 feet; thence S 30° 31' 00" E 192.06 feet; thence S 22° 06' 45" E 96.57 feet; thence S 41° 54' 30" E 52.50 feet; thence S 27° 41' 15" E 324.38 feet; thence S 11° 34' 30" E 224.57 feet; thence N 87° 07' 30" W 247.33 feet; thence N 8° 00' W 569.45 feet; thence N 34° 15' W 293.79 feet to the true point of beginning.
>
> Containing 2.88 acres, more or less.
>
> Subject to 1) reservations in the U. S. Patent; 2) rights of the public and governmental bodies in and to that

portion of the premises herein described lying below
the high water mark of Wheeler Creek.

B.      For an order and decree from the Court decreeing that the Defendant,

USFS', claims in and to title to the real property described in Paragraph A above are

without any right whatsoever, and that Defendant, USFS, has no estate, right, title, liens,

easements, rights-of-way, or interest in the subject property or any part of the subject

property.

C.      For such other and further relief as the Court may deem just and

appropriate.

DATED this **15** day of December, 2005.

BAXTER BRUCE & SULLIVAN P.C.

By _____

Z. Kent Sullivan ABA No. 0105038
Attorneys for Plaintiffs Reinwand



x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x

x



# EXHIBITS - TABLE OF CONTENTS
*Reinwand v. U.S*

Exhibit "1" -   Plat map delineating Lot A, Subdivision of U. S. Survey 1159, according to Plat 85-124, Records of the Juneau Recording District, First Judicial District, State of Alaska,

Exhibit "2" -   Limited Warranty Deed recorded October 7, 2004 at Serial No. 2004-008921-0, and evidencing ownership of property described in Exhibit "1."

Exhibit "3" -   Litigation Guarantee No. 0239-521554, issued by First American Title Company and dated June 30, 2005.

Exhibit "4" -   Plat map of Homestead Entry Survey No. 85 in the Tongass National Forest, on West side of Wheeler Creek, ½ mile South of Game Cove, West side of Admiralty Island, and dated May 7, 1920.

Exhibit "5" -   Copy of Patent No. 936822, dated May 24, 1924.

Exhibit "6" -   Warranty deed recorded at Book 301, Page 548, and dated June 27, 1988.





**2004-008921-0**

Recording Dist: 101 - Juneau
10/7/2004 12:46 PM Pages: 1 of 3

A
L
A
S
K
A

# LIMITED WARRANTY DEED

The Grantors, KURT F. REINWAND (also known of record as KURT
REINWAND and JERRY REINWAND) and LYNN D. REINWAND (also known of
record as LYNN REINWAND), husband and wife, tenants by the entirety, of 2 Marine
Way, Suite 219, Juneau, Alaska, 99801, for and in consideration of one dollar ($1.00)
and other valuable consideration, in hand paid, hereby bargain, grant, and convey to
**Kurt F. Reinwand and Lynn D. Reinwand, Trustees, or their successors in trust,
under the Kurt F. and Lynn D. Reinwand Living Trust, and any amendments
thereto,** Grantee, of 2 Marine Way, Suite 219, Juneau, Alaska, 99801, all interest in the
following described real estate, located in the Juneau Recording District, First Judicial
District, State of Alaska:

Parcel No. 1:

Lot 7, Nunatak Terrace II according to Plat 76-49, Juneau
Recording District, First Judicial District, State of Alaska.

SUBJECT HOWEVER, to any easements, reservations, covenants,
conditions, restrictions, plat notations, patent reservations,
exceptions, right-of-way and agreements of record.

Parcel No. 2:

Lot A, U.S. Survey 1159 according to Plat 85-124, Juneau
Recording District, First Judicial District, State of Alaska.

SUBJECT TO: Patent reservations, conditions, restrictions and
easement of record and the right of the public and governmental

Limited Warranty Deed, Reinwand, 6621-005
Page 1 of 3

EXHIBIT  2
PAGE  1  OF  3

bodies in and to any portion of the above property lying below mean high water line of Wheeler Creek.

Parcel No. 3:

Lot 6A, 6B & 7, Block 76, TIDELAND ADDITIONS TO THE CITY OF JUNEAU, according to Plat 74-9W and Lot 7, Block 76, Tidelands Addition to the City of Juneau, according to official plat thereof, filed under Plat Number 354, Records of the JUNEAU Recording District, FIRST Judicial District, State of ALASKA.

SUBJECT TO reservations, exceptions, easements, covenants, conditions and restrictions of record, if any.

Parcel No. 4:

A tract of land embraced in U.S. Survey No. 356 according to the map thereof approved April 1, 1913, more particularly described as follows:

BEGINNING at Corner No. 1 M.C., a cross slate rock, from which U.S.L.M. No. 354 bears North 27 degrees 51' West 131.88 chains distant corner No. 2 M.C. U.S. SURVEY No. 355 bears North 21 degrees 57' West, 66.88 chains distant; from Corner No. 1 M.C. by meanders along the West side of Shelter Island South 8 degrees 45' West 7.29 chains, South 39 degrees 04' West, 3.53 chains to Corner No. 2 M.C; thence East 8.33 chains to Corner No. 3; thence North 9.95 chains to Corner No. 4; thence West 4.98 chains to Corner No. 1, the place of Beginning, being located on the West side of Shelter Island, Northeast shore of Saginaw Channel, located in Juneau Recording District, First Judicial District, State of Alaska.

The warranty in this deed is limited in this matter to: (1) the coverage the Grantors have under any policy of title insurance or damages of $10.00 (whichever is greater) and (2) the application of the doctrine of estoppel with respect to after acquired title. GRANTORS in this deed are the TRUST MAKERS of the above revocable trust.

Limited Warranty Deed, Rainwand, 6621-005
Page 2 of 3



2 of 3
2004-008921-0

EXHIBIT 2
PAGE 2 OF 3

The legal description and stated title owner contained herein were supplied by the parties, and the draftsman assumes no responsibility for the correctness thereof. This document is used for trust funding and may be over inclusive in its description to attempt to include all property owned in the trust.

Dated this 6th day of ~~September~~ October 2004.

_____
**Kurt F. Reinwand**

_____
**Lynn D. Reinwand**

STATE OF ALASKA                    )
                                   ) ss.
FIRST JUDICIAL DISTRICT            )

    THIS IS TO CERTIFY that on this 6th day of ~~September~~ October 2004, before me, the undersigned, a notary public in and for the State of Alaska, duly commissioned and sworn, personally appeared KURT F. REINWAND and LYNN D. REINWAND, to me known and known to me to be the persons named in and who executed the within and foregoing instrument, and they acknowledged to me that they signed the same freely and voluntarily for the uses and purposes therein mentioned.

    WITNESS my hand and official seal the day and year in this certificate first above written.

[Notary seal: BARBARA S. WILSON, NOTARY PUBLIC, MY COMMISSION EXPIRES FEB. 25, 2007, STATE OF ALASKA]

_____
Notary Public, State of Alaska
My commission expires:  12-25-2007

After recording, return to:

Baxter Bruce & Sullivan P.C.
P.O. Box 32819
Juneau, AK  99803

Limited Warranty Deed, Reinwand, 6621-005
Page 3 of 3

[Barcode]
3 of 3
2004-008921-0

EXHIBIT 2
PAGE 2 OF 2

Litigation Guarantee (Rev. 6-92)
Guarantee Form No. 1

Guarantee No.: **0239-521554**



# GUARANTEE

Issued by

*First American Title Insurance Company*

*2227 North Jordan Avenue, Juneau, AK 99801*
*Title Officer: Mary Dornbirer*
*Phone: (907) 789-5252*
*FAX: (907) 789-7395*

EXHIBIT 3
PAGE 1 OF 6

Litigation Guarantee (Rev. 6-92)
Guarantee Form No. 1



**First American Title Insurance Company**
2227 North Jordan Avenue
Juneau, AK 99801
Phn - (907) 789-5252
Fax - (907) 789-7395

## LITIGATION GUARANTEE

LIABILITY:  $    **250.00**

FEE:        $    **250.00**

ORDER NO.:    **0239-521554**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE,

### First American Title Insurance Company
a Corporation, herein called the Company

GUARANTEES

Baxter Bruce and Sullivan

herein called the Assured, against loss not exceeding the liability amount stated above which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, on the date stated below,

1.    The title to the herein described land was vested in the vestee named, subject to the matters shown as exceptions herein, which exceptions are not necessarily shown in the order of their priority; AND

Dated: June 30, 2005 at 8:00 A.M.

**First American Title Insurance Company**

Mary Dornbirer, Title Officer

EXHIBIT __3__
PAGE __2__ OF __6__

Litigation Guarantee (Rev. 6-92)
Guarantee Form No. 1

Title to said estate or interest at the date hereof is vested in:

> Kurt F. Reinwand and Lynn D. Reinwand, Trustees, or their successors in trust, under the Kurt F. and Lynn D. Reinwand Living Trust, and any amendments thereto, as to Lot A and the United States of America, as to Lot B

The estate or interest in the land hereinafter described or referred to covered by this Guarantee is:

> Fee Simple Estate

## EXCEPTIONS:

1.    Reservations or exceptions in patents or in acts authorizing the issuance thereof.

2.    Rights of the public and of governmental bodies in and to that portion of the premises herein described lying below the high water mark of Wheeler Creek.

3.    Any prohibition or limitation on the use, occupancy or improvements of the land resulting from the right of the public or riparian owners to use any waters which may cover the land or to use any portion of the land which is now or may formerly have been covered by water.

NOTE:  THIS GUARANTEE IS RESTRICTED TO THE USE OF THE ASSURED HEREIN AND IS NOT TO BE USED AS A BASIS FOR CLOSING ANY TRANSACTION AFFECTING TITLE TO SAID PROPERTY.

EXHIBIT 3
PAGE 3 OF 6

Litigation Guarantee (Rev. 6-92)                                                    Guarantee No.: **0239-521554**
Guarantee Form No. 1                                                                                      Page No.: 3

The land referred to in this Guarantee is situated in the State of Alaska ,  Juneau Recording District, and
is described as follows:

> Lots A and B, ADMIRALTY ISLAND - U.S. SURVEY NO. 1159, according to Plat 85-124, Juneau
> Recording District, First Judicial District, State of Alaska.

EXHIBIT 3
PAGE 4 OF 6

Litigation Guarantee (Rev. 6-92)
Guarantee Form No. 1

Guarantee No.: **0239-521554**

## SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1. Except to the extent that specific assurance are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.

(b) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.

(c) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.

2. Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A), (C) or in Part 2 of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps, or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

(b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1) which are created, suffered, assumed or agreed to by one or more of the Assureds; (2) which result in no loss to the Assured; or (3) which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.

(c) The identity of any party shown or referred to in Schedule A.

(d) The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

## GUARANTEE CONDITIONS AND STIPULATIONS

**1. Definition of Terms.**
The following terms when used in the Guarantee mean:

(a) the "Assured": the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.

(b) "land": the land described or referred to in Schedule (A) (C) or in Part 2, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A) (C) or in Part 2, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.

(c) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(d) "public records" : records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

(e) "date": the effective date.

**2. Notice of Claim to be Given by Assured Claimant.**
An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**3. No Duty to Defend or Prosecute.**
The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

**4. Company's Option to Defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.**
Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

(a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay

any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

(c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

(d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such Assured for this purpose. Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

**5. Proof of Loss or Damage.**
In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to such Assured under the Guarantee shall terminate. In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the Loss or Damage. All information designated as confidential by the Assured provided to the Company, pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

Form No. 1282 (Rev. 12/15/95)

EXHIBIT 3
PAGE 5 OF 6

*First American Title*

Litigation Guarantee (Rev. 6-92)
Guarantee Form No. 1

**6. Options to Pay or Otherwise Settle Claims: Termination of Liability.**
In case of a claim under this Guarantee, the Company shall have the following additional options:
(a) To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.
The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by said mortgage or said lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.
Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price.
Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.
(b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.
To pay or otherwise settle with other parties for or in the name of an Assured claimant any claim Assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.
Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4.

**7. Determination and Extent of Liability.**
This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the Exclusions From Coverage of This Guarantee.
The Liability of the Company under this Guarantee to the Assured shall not exceed the least of:
(a) the amount of liability stated in Schedule A or in Part 2;
(b) the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage Assured against by this Guarantee occurs, together with interest thereon; or
(c) the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance Assured against by this Guarantee.

**8. Limitation of Liability.**
(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter Assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
(b) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.

(c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

**9. Reduction of Liability or Termination of Liability.**
All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

**10. Payment of Loss.**
(a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

**11. Subrogation Upon Payment or Settlement.**
Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.
The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies. If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

**12. Arbitration.**
Unless prohibited by applicable law, either the Company or the Assured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision or other obligation. All arbitrable matters when the Amount of Liability is $1,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. The Rules in effect at Date of Guarantee shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permits a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
A copy of the Rules may be obtained from the Company upon request.

**13. Liability Limited to This Guarantee; Guarantee Entire Contract.**
(a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
(b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
(c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**14. Notices, Where Sent.**
All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at 2 First American Way. Bldg. 2, Santa Ana, CA. 92707.

Form No. 1282 (Rev. 12/15/95)

EXHIBIT __3__
PAGE __6__ OF __6__

ORIGINAL

Survey accepted May 7, 1920
G.L.O.

SURVEY NO. 1155

Plat of

# HOMESTEAD
# ENTRY SURVEY

No. **85**

in the

## TONGASS

# NATIONAL FOREST

on

West side of Wheeler Creek, ½ mile south of
Barrie Cove, west side of Kennaly Island
Unsurveyed Land
TERRITORY OF

## ALASKA

This plat of Homestead Entry Survey
No.85, Territory of ALASKA is
strictly conformable to the field notes
thereof on file in this office, which
have been examined and approved.

U.S. Surveyor General's Office
JUNEAU, ALASKA,
April 24, 1918.

Charles E. Davidson
U.S. Surveyor General

| Act of June 11, 1906 | | Act of August 11, 1916 |
|---|---|---|
| List No. 6-1965 | | Dated April 20, 1916 |
| Latitude | | 55°03'33"N | | Observations at |
| Longitude | | 134°45'W | | Corner No. 3 |
| Mean Mag. Decl. | | 30°42'E | |

SCALE: 10 chains to 1 inch.

### MEANDERS

| No. | Bearing | Dist. |
|---|---|---|
| 1 | S.34°13'E | 4.50 |
| 2 | S.5°00'E | 4.90 |
| 3 | S.12°45'W | 7.50 |
| 4 | S.58°30'E | 2.90 |
| 5 | S.34°30'W | 8.10 |
| 6 | N.82°30'E | 3.30 |
| 7 | S.56°15'E | 12.80 |
| 8 | S.20°45'E | 14.10 |
| 9 | S.26°00'W | 6.10 |
| 10 | S.7°00'W | 6.50 |
| 11 | S.71°15'E | 6.90 |
| 12 | N.84°00'E | 4.60 |
| 13 | N.49°00'E | 3.30 |
| 14 | S.86°15'E | 1.20 |
| 15 | S.30°00'E | 11.70 |
| 16 | S.42°40'W | 2.90 |
| 17 | S.20°00'W | 3.90 |
| 18 | S.9°15'W | 1.90 |
| 19 | S.30°45'W | 1.90 |

| | Areas in Acres | | |
|---|---|---|---|
| | | Cor.Fr.Lots | |
| H.E.Survey No. 85 | 8.5 | | |
| In Section | | | |
| In Section | | | |
| In Section | | | |
| In Section | | | |
| Total | | | 134.80 |

| Surveys Designated | By whom Surveyed | Inst.Cont.Group | | When Surveyed | | Date of |
|---|---|---|---|---|---|---|
| | | No. | Date | Begun | Completed | approval |
| H.E.Survey No.85 | Geo. W. Root | | | | | |
| | Surveyor-Group Scenic | 64 | March 19, 1917 | May 28, 1917 | June 14, 1917 | April 24, 1918 |
| H.E. Survey No.84 | Geo. W. Root | 64 | March 19, 1917 | May 28, 1917 | May 30, 1917 | April 13, 1918 |

Lot No. 9-1965
(H.E.S. No. 84)

**H.E.S. No.85**
Area = 134.80 Acres

Lot No. 9-1965
(H.E.S. No. 84)

N.50°30'W 22.58

N.86°30'W 32.31

U.S.L.No.1006

EXHIBIT 4
PAGE 1 OF 1

176                    ⬤         HES ⚓ 85      ⬤ 551157

UNITED STATES OF AMERICA

DISTRICT OF ALASKA                 SS

    I, John H. Dunn, clerk of the District Court of the United States for the First
Division, District of Alaska, do hereby certify that George D. Beaumont, United States
Marshal for the said First Division, District of Alaska, who is to me known to be the
person named in an who executed the foregoing Deed of Conveyance, this day personally
appeared before me and acknowledged that he executed the same as said U. S. Marshal, for
the uses and purposes therein set forth.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said District
Court at the City of Juneau in said District, this 6th day of October in the year of our
Lord 1925.

(SEAL)                              JOHN H. DUNN    Clerk

Filed for record at 4 P.M., October 6, 1925. Recorded 29 Deeds, Pages 174-176

                                    V. A. Paine   DISTRICT RECORDER

------oOo------

Anchorage 03194

                        THE UNITED STATES OF AMERICA,

    TO ALL TO WHOM THESE PRESENTS SHALL COME, GREETING:

    WHEREAS, a Certificate of the Register of the Land Office at Anchorage, Alaska, has
been deposited in the General Land Office, whereby it appears that, pursuant to the Act
of Congress of May 20, 1862, "To Secure Homesteads to Actual Settlers on the Public
Domain", and the acts supplemental thereto, the claim of Frank F. Wheeler, has been
established and duly consummated, in conformity to law, for the land embraced in H. E.
Survey No. 85, situate on the west side of Wheeler Creek, one-half mile south of Game
Cove, west side of Admiralty Island, Alaska, more particularly bounded and described as
follows:    *South of Hawk Inlet.*

    Beginning at corner No. 1, a hemlock tree eight inches in diameter marked 1 HES
85, from which U. S. Location Monument No. 798, bears north eighty-eight degrees thirty-
seven minutes west thirty-three and ninety-one hundredths chains distant; thence, north
two degrees fifty-five minutes west eighty chains to corner No. 2, a hemlock post three
feet long six inches square, marked 2 HES 85; thence, south eighty-nine degrees fifty-
eight minutes east eleven chains to corner No. 3, a spruce post four feet long five
inches square, marked 3 HES 85 and MC; thence, meandering the left bank of Wheeler Creek
upstream at mean high water mark, south thirty-four degrees fifteen minutes east four
and fifty hundredths chains, south eight degrees east eight and sixty hundredths chains,
south thirteen degrees forty-five minutes west seven and forty hundredths chains, south
thirty-two degrees thirty minutes east two and sixty hundredths chains, south twenty-
four degrees thirty minutes west six and sixty hundredths chains, south nine degrees
thirty minutes east two and eighty hundredths chains, south fifty-six degrees fifteen
minutes east twelve and sixty hundredths chains, south twenty degrees forty-five minutes
east four and sixty hundredths chains, south twenty nine degrees fifteen minutes west
thirteen and ten hundredths chains, south seven degrees west six and eighty hundredths
chains, south seven degrees fifteen minutes east six and ninety hundredths chains,
north eighty degrees forty-five minutes east four and sixty hundredths chains north
sixty-seven degrees east three and thirty hundredths chains, south eighty-eight degrees
fifteen minutes east one and twenty hundredths chains south thirty-two degrees east
eleven and seventy hundredths chains, south forty-two degrees forty-five minutes west
two and sixty hundredths chains; south fifty degrees west two and ninety hundredths chains

EXHIBIT 5
PAGE 1 OF 2

177

outh seventy-six degrees fifteen minutes West one and fifty hundredths chains , south
thirty-nine degrees forty-eight minutes West one and fifty-six hundredths chains to
corner No. 4, a spruce post four feet long four inches square, marked MC and 4 HES 85;
thence, north eighty-nine degrees fifty-six minutes West twenty-two and twenty-one hun-
dredths chains to corner  No. 1, the place of beginning, containing one hundred thirty-
four acres and eighty hundredths of an acre, according to the Official Plat of the Survey
of the said Land, returned to the GENERAL LAND OFFICE by the Surveyors General:

NOW KNOW YE, That there is, therefore, granted by the UNITED STATES unto the said
claimant, the tract of Land above described; TO HAVE AND TO HOLD the said tract of land,
with the appurtenances thereof, unto the said claimant, and to the heirs and assigns
of the said claimant, forever; subject to any vested  and accrued water rights for mining
agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs
used in connection with such water rights as may be recognized and acknowledged by the
local customs, laws, and decisions of courts; and there is reserved from the lands here-
by granted as right of way thereon for ditches or canals constructed by the authority
of the United States. And there is also reserved  to the United States a right of way
for the construction of/roads , telegraph and telephon  lines, in accordance with the
Act of March 12, 1914 (38 Stat., 305).

IN TESTIMONY WHEREOF, I , CALVIN COOLIDGE, President of the United States of America
have caused these letters to be made Patent, and the Seal of the General Land Office to
be hereunto affixed.

GIVEN under my hand, at the City of Washington, the Twenty-fourth day of May in
the year of our Lord onethousand nine hundred and twenty-four and of the Independence
of the United States the one hundred and forty-eighth

By the President:          CALVIN COOLIDGE
                     By    VIDIA B. PUSH, Secretary,
                           M. P. LE ROY
                           Recorder of the General Land Office
(SEAL)
Recorded: Patent Number 936822

Filed for record at 9 A.M , October 7, 1925. Recorded 29 Deeds, Pages 176-177

_____V. A. Paine____DISTRICT RECORDER

-----oOo-----

KNOW ALL MEN BY THESE PRESENTS: That J. F. Tobin the party of the first part, for and
in consideration of the sum of TWO HUNDRED SEVENTY FIVE AND 00/100 ($275.00) DOLLARS,
lawful money of the United States of America, to him in hand paid by Karl L. Klerke
the party of the second part, the receipt whereof is hereby acknowledged, does by these
presents grant, bargain, sell and convey unto the said party of the second part, his
executors, administrators and assigns all that certain lot, piece or parcel of land
situated in the city and recording district of Juneau and particularly described as
follows, to-wit:

Situated about 80 feet from the North of Twelfth Street adjoining on the South the
land claimed by James Larson, on the North by vacant tide land, on the West the Gastin-
eau Channel and on the East the mountains. The house is a three room house with the
platform it is approximately 86 by 47 feet in dimensions and was formerly owned by
John L. Cochran.

TOGETHER with all and singular the tenements, hereditaments and appurtenances
thereunto belonging, or in anywise appertaining, and all the furniture in the house
upon the premises contained.

TO HAVE AND TO HOLD the same to the said party of the second part, his executors,
administrators and assigns forever.  And he does for his heirs, executors and adminis-

EXHIBIT 5
PAGE 2 OF 2

t>2

7301 PAGE 548

<u>WARRANTY DEED</u>

THE TRUST FOR PUBLIC LAND, a nonprofit California public benefit corporation, Grantor, whose principal place of business is 116 New Montgomery Street, San Francisco, California, 94105, for and in consideration of FIVE HUNDRED TWENTY THOUSAND DOLLARS ($520,000.00) to them in hand paid, does hereby CONVEY AND WARRANT to the UNITED STATES OF AMERICA, Grantee, and its assigns, of 12th & Independence Avenue SW, Washington, D.C. 20250, the following real property located in the Juneau Recording District, First Judicial District, State of Alaska, described as follows:

<u>COPPER RIVER MERIDIAN</u>

Lots B through G, U.S. Survey 1159 according to Plat 85-124, Juneau Recording District, First Judicial District, State of Alaska, containing 61.33 acres, more or less.

SUBJECT TO easements, if any, for established or existing roads, highways and utilities.

AND SUBJECT TO:

1. The rights of the public and governmental bodies in and to any portion of the property lying below the mean high water line of Wheeler Creek.

2. Restrictions delineated on Plat 85-124.

The acquiring agency is the Forest Service, U.S. Department of Agriculture.

Dated this 27th day of June, 1988.

EXHIBIT 6
PAGE 1 OF 2

BOOK 30 /PAGE 549

IN TESTIMONY WHEREOF, the said THE TRUST FOR PUBLIC LAND, has caused these presents to be executed by its Executive Vice President and attested by its Assistant Secretary, and its corporate seal to be hereunto affixed this 27th day of June, 1988.

THE TRUST FOR PUBLIC LAND

By _____
Ralph N. Benson
Executive Vice President

Attest:

By: _____         (CORPORATE SEAL)
Nancy O. Shanahan
Assistant Secretary

State of California      }
                         } ss.
County of San Francisco  }

On this 27th day of June, 1988, before me Ellen P. Rosenbloom, the undersigned Notary Public, personally appeared Ralph N. Benson, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) who executed the within instrument as Executive Vice President, on behalf of the corporation therein named and acknowledged to me that the corporation executed it.

_____

My commission expires   1/5/90



This instrument was drafted under the direction of Robert A. Maynard, Attorney, Office of the General Counsel, U.S. Department of Agriculture, Juneau, Alaska.

88-4178
13⁰⁰
RECORDED FILED
JUNEAU REC.
DISTRICT

JUL 1 9 53 AM '88

REQUESTED BY TPA

ADDRESS_____

Return:   U.S.A.
          c/o U.S. Forest Service
          P.O. Box 021628
          Juneau, Alaska 99802-1628

EXHIBIT   6
PAGE  2  OF  2